Opinion delivered April 17, 1886.

[No. 3827.]

## G. B. Rollins *v.* The State.

Forgery—Practice—Notice—Evidence.—The indictment, after charging the forgery of the instrument in writing. alleged that the same "is in the possession of the defendant, or is lost or destroyed, and that access to the same can not be had" by the grand jury. To the parol evidence offered by the State to prove the contents of the instrument, the defense objected that before the State could resort to secondary evidence the defendant should have been notified to produce the instrument. *Per con-*

*tra*, it is insisted on behalf of the State that the allegation in the indictment charging the defendant with possession of the instrument was sufficient notice. *Held*, that the objection was well taken, and that the trial court erred in permitting the State to prove the contents of the instrument by parol without having served notice upon the defendant to produce it. See the opinion *in extenso* for the rules applicable to the question.

APPEAL from the District Court of Collin. Tried below before the Hon. R. Maltbie.

The conviction in this case was for the forgery of an order, purporting to be the act of one George Eller, in Collin county, Texas, on the third day of July, 1885. A term of two years in the penitentiary was the penalty assessed by the verdict.

P. B. Hatcher was the first witness for the State. He testified that he was engaged in the mercantile business in the town of Weston, Collin county, Texas. On the third day of July, 1885, the defendant brought to the witness's store an order purporting to have been drawn by Mr. George Eller, which read about as follows:

"July 3, 1885.

"*Mr. Hatcher*:

"You will please let Mr. G. B. Rollins have $4.00 worth of goods, and charge to me.

(Signed.)                    "GEORGE ELLER."

Witness could not say that he had recited literally the words of the order, but such was its substance. He saw the order but once, and took a copy of it while the defendant was trying on a pair of pants in the back room. He did not know what had become of either the order or the copy. He gave the order back to the defendant, declining to honor it before seeing Mr. Eller, and defendant placed it in his pocket. The order was written on a blank leaf of a patent medicine day book. It was written in poor handwriting, but was readable. Defendant said that the order was genuine, and that Eller wrote it in the field, in his presence. The witness refused to sell defendant the pants on the order, but told him to tell Eller to come and see him about the purchase of the goods; that he, Eller, could get the goods, but that he would not fill the order. This occurred on July 3, 1885.

George Eller testified, for the State, that the defendant worked

for him about the last week in June, 1885. Witness did not write and give him an order on P. B. Hatcher for goods to the amount of four dollars, or any other amount; nor had he, at any time, authorized any one to sign his name to such an order. Witness had never seen the defendant try to write, and was unable to say whether he could or could not write. The defendant, on the day before this trial, was tried and convicted for the forgery of an order for four dollars on Apolas & Halsell, which order purported to have been signed by Joel Eller. The defendant left witness's house, about four miles from Weston, about nine o'clock on the morning of July 3, 1885. He said nothing to witness then or afterwards about getting him a pair of pants from Hatcher.

Joel Eller testified, for the State, that the defendant came to the house occupied by himself and George Eller, about a week before July 3, 1883. He worked for witness and George Eller until the morning of July 3, when he left, saying that he was going to Weston. He returned to the house the next morning, and was there when witness started to Weston, and knew that the witness was going to Weston. When witness returned from Weston on that day, the defendant was gone. He told no one that he was going, and witness had no idea that he intended to leave. The State closed.

George Rollins testified, for the defense, that he and the defendant were brothers. He was twenty-four years old and the defendant was about eighteen. Witness and defendant were born in East Tennessee. Defendant had attended school but a very short time, and had acquired no education. He was unable to write eighteen months prior to this trial. Defendant once attempted to write a letter to his father, but, proving unequal to the task, witness wrote the letter for him. Defendant's mother was sent to, and confined, in an asylum when the defendant was quite a small boy.

Frank Demoree testified, for the defense, that, while in jail with defendant, defendant requested him to write a letter for him. Witness told him to write it himself, and he replied that he could not write. Witness handed him a pencil and told him to try. Defendant made some marks on a piece of paper, which was exhibited to the jury.

The motion for new trial raised the question discussed in the opinion.

*Johnson & Jenkins*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for forgery. The indictment charges the defendant with the forgery of a certain order purporting to be the act of George Eller. It is also alleged in the indictment that the order "is in the possession of defendant, or is lost, or destroyed, and that access to the same can not be had by them" (the grand jury).

Upon the trial the State, over the objection of defendant, proved by parol evidence the contents of the order. It is insisted by the appellant that before secondary evidence could be resorted to the defendant should have been notified to produce the original. But this is met by the Assistant Attorney General with the proposition that defendant was sufficiently notified by the indictment. The question, therefore, is: Was the allegation contained in the indictment a sufficient notice?

Mr. Greenleaf says: "When the instrument or writing is in the hands or power of the adverse party, there are, in general, except in the cases above mentioned, no means at law of compelling him to produce it; but the practice in such cases is to give him or his attorney a regular *notice to produce* the original. Not that, on proof of such notice, he is compellable to give evidence against himself, but to lay a foundation for the introduction of secondary evidence of the contents of the document or writing, by showing that the party has done all in his power to produce the original." (1 Greenl. Ev., sec. 560.)

Nor does this case come within the exceptions noted by Mr. Greenleaf in section 561, which is as follows: "There are *three cases* in which such notice to produce is not necessary. First, where the instrument to be produced, and that to be proved are *duplicate originals;* for in such case, the original being in the hands of the other party, it is in his power to contradict the duplicate original by producing the other if they vary; secondly, where the instrument to be proved is *itself a notice,* such as a notice to quit, or notice of the dishonor of a bill of exchange; and, thirdly, where, from the *nature of the action,* the defendant has notice that the plaintiff intends to charge him with possession of the instrument, as, for example, in trover for a bill of exchange. And the principle of the rule does not require notice to the adverse party to produce a paper belonging to a third per-

son, of which he has fraudulently obtained possession; as where, after service of a *supœna duces tecum*, the adverse party had received the paper from the witness in fraud of the *subpœna*."

And upon this subject Mr. Bishop says: "Before evidence of the forgery will be admitted on the trial, the forged instrument must be produced, or its non-production justified from necessity, as by showing that it is lost or destroyed, or not within reach of the process of the court, or is in the possession of the defendant. And in the last instance, not in the others, reasonable notice must have been given him to produce it." (2 Bish. Crim. Proc., sec. 433.)

But, as above stated, it is insisted that such notice is contained in the indictment. This allegation, to-wit, that the order was in the possession of the defendant, or lost, or destroyed, and that access to the same could not be had, etc., was for another purpose—another very important and necessary purpose. The rules of pleading in forgery require that the indictment contain a *transcript* of the instrument forged. But, if it is lost or destroyed, or is in the hands of the person accused, this particularity may be dispensed with on the fact being made thus to appear in the indictment; when, in such case, the substance only need be given. (1 Bish. Cr. Proc., sec. 553.)

Again. the indictment does not allege that the instrument was in the possession of defendant, but that it was in his possession, lost, or destroyed, and that it was not accessible to the grand jury. If this indictment had also called upon, or in some way notified defendant to produce the order upon the trial, or that secondary evidence would be used to prove its contents, this would have been sufficient. This, however, was not done. We believe, therefore, that the court erred in not sustaining the objections of the defendant to this character of evidence, he not having been notified of its intended use.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*