**Arturo BARRERA and Leroy Barrera, Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 13–91–118–CR, 13–91–119–CR.**

Court of Appeals of Texas, Corpus Christi.

Nov. 21, 1991.

Discretionary Review Refused Feb. 26, 1992.

Juan Martinez Gonzalez, Beeville, for appellants.

C.F. Moore, Jr., Dist. Atty., 156th Judicial District of Texas, Beeville, for appellee.

Before GILBERTO HINOJOSA, KENNEDY and DORSEY, JJ.

OPINION

GILBERTO HINOJOSA, Justice.

Appellants Arturo and Leroy Barrera were jointly indicted for the aggravated assaults of Robert, Ruben, and Roland Camareno. By three counts, the indictment alleged that appellants intentionally and knowingly caused serious bodily injury to the Camarenos by stabbing them with a knife used as a deadly weapon. Following a bench trial, the trial court found that the appellants had acted together to commit aggravated assault as alleged in the indictment. The trial court did not specify under which count appellants were found guilty. The trial court assessed Arturo's punishment at a fine of $1,200 and confinement in prison (probated) for seven years and Leroy's punishment at ten years in prison. We affirm.

 In their sole point of error, appellants contend that the evidence fails to show that: 1) they used a knife as a deadly weapon, and 2) the Camarenos suffered serious bodily injury. Although the indictment alleged that appellants committed aggravated assaults against all three Camarenos, the trial court found the appellants guilty of only one offense under a general verdict of guilty. When a general verdict is returned, and the evidence is sufficient to support a finding under any of the counts, the verdict will be applied to the offense finding support in the facts. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim.App.1987). Accordingly, we will view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of one of the counts beyond a reasonable doubt. *See Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App. 1989); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

The evidence shows that on Saturday evening, August 25, 1990, members of the Camareno family gathered at the Chess Club in Bee County to socialize and dance. To celebrate a birthday, members of the Barrera family also gathered at this club. Bad blood had existed between these two families for several years.

On this particular night, while members of both families were dancing, Robert Camareno's wife Arlene got into a fight with Rachel Arroyos, who had been dancing with Albert Cardenas. When Robert and his brother Ruben tried to break up the fight, Albert hit Ruben, and Ruben hit Albert. The parties then returned to their respective areas in the club, and calm returned. Later, Arturo Barrera came over and asked Roland Camareno what the problem was. Roland told Arturo to go talk to his relatives, and Arturo left. Shelby Lewis then told Roland that Arturo might have a knife. Then another friend approached Roland and told him to watch his back because the Barreras were all talking.

Soon thereafter, Roland saw his brothers Robert and Ruben heading toward a rest room. Roland went toward the rest room himself when he saw the two appellants and two other men following his brothers into the rest room. When Roland got close, five men tried to block his way. When Roland ultimately got into the rest room, he saw "people" swinging at his brothers. As Roland tried to separate the participants, he felt a sharp pain, looked, and saw Arturo pulling a knife out of his side. Roland fell to the floor, and two men tried to hold him as Arturo came at him with the knife. Roland kicked Arturo, fought his way out of the rest room, exited the club, and was then taken to a hospital.

Dr. Rodney Mel Schorlemmer treated Roland at the hospital. Dr. Schorlemmer testified that Roland had a stab wound under his right ribs. He was in shock and had lost a considerable amount of blood. The stab wound pierced the left lobe of his liver. Roland had a "fair amount" of blood inside his abdomen. Dr. Schorlemmer per-

formed exploratory surgery to determine the extent of the injury and to drain fluid from the abdomen. No additional surgery was required as Roland's liver stopped bleeding on its own. Roland was placed in intensive care for one night and remained hospitalized for three additional days. According to Dr. Schorlemmer, Roland's wounds created a substantial risk of death.

Ruben and Robert Camareno also testified for the State. According to them, they went to the rest room. After they entered, Albert Cardenas, Frankie Barrera and appellants came in. Cardenas hit Ruben who, in return, hit Cardenas and knocked him out. In the subsequent fight, according to Robert, Arturo and Leroy cut him with a knife, and Frankie and Arturo cut Ruben with a knife. Ruben testified that Arturo and Frankie cut him, and he saw Leroy standing behind Robert with a knife. Ruben and Robert both fought their way out of the rest room, apparently ahead of Roland. Ruben and Robert were taken to the hospital and examined by Dr. Schorlemmer. He testified that Robert had stab wounds to his abdomen and back. Ruben had stab wounds to his right and left lower chest, right arm, and right thigh. The wounds to Robert and Ruben did not place them in risk of death. Dr. Schorlemmer did testify, however, that the location of the stabbings to Robert and Ruben would have created a substantial risk of death had the wounds actually been deeper.

At trial, all three Camarenos showed the trial judge scars from the fight which had occurred some five months earlier.

Appellant argues that the State failed to show that a knife was used as a deadly weapon. The gist of appellant's argument is that because the State failed to introduce a knife into evidence, did not introduce evidence to show the characteristics of the knife, and did not show that any of the Camarenos suffered serious bodily injury, any knife used by appellants was not a deadly weapon.

■ We will first address appellant's contention that none of the Camarenos suffered serious bodily injury. The evidence shows that Roland was the most seriously wounded victim. He suffered a stab wound which required surgery and hospitalization for four days. When he entered the hospital, he was in shock and had a substantial loss of blood. Surgery was required to drain the abdomen and prevent infection. Dr. Schorlemmer testified that the injury presented a substantial risk of death, but he also testified that post-operatively, Roland was not at substantial risk of death.

Appellant isolates this last portion of Dr. Schorlemmer's testimony to argue that Roland was not in jeopardy of losing his life and therefore did not suffer serious bodily injury. We disagree with appellant's conclusion.

■ "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex.Penal Code Ann. § 1.07(a)(34) (Vernon 1974). Dr. Schorlemmer's testimony that the wound created a substantial risk of death is sufficient to establish that Roland suffered serious bodily injury. *See Boney v. State*, 572 S.W.2d 529, 532 (Tex.Crim.App.1978). The relevant inquiry is the extent of the bodily injury as inflicted, not after the effects have been ameliorated or exacerbated by medical treatment. *Brown v. State*, 605 S.W.2d 572, 575 (Tex.Crim.App.1980). Dr. Schorlemmer's testimony that post-operatively Roland was not at risk of death does not render the evidence insufficient.

■ We next address whether the evidence shows that the knife used was shown to be a deadly weapon. A knife is not a deadly weapon per se. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983). To show that a knife was used as a deadly weapon, the State must show that in the manner of its use or intended use it was capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(11) (Vernon 1974). The State is not required to introduce the actual knife into evidence to prove that it was used as a deadly weapon. *Blain*, 647 S.W.2d at 294. A witness' testi-

mony that a knife was used in a manner capable of causing death or serious bodily injury is sufficient to show that the knife was a deadly weapon. *Id.*

In the present case, the testimony shows that Arturo and Leroy went into the rest room together, that they acted together in the attack on the Camarenos, that each stabbed one or more of the Camarenos with a knife, and that the stab wound to Roland caused him serious bodily injury. Accordingly, the evidence is sufficient to show that Arturo and Leroy were guilty of causing serious bodily injury to Roland Camareno by stabbing him with a knife used as a deadly weapon. The evidence is sufficient to sustain their convictions. Appellants' sole point of error is overruled.

The judgments of the trial court are affirmed.