In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00172-CR
______________________________


CHARLES WILSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 02F-236-102


                                                 


Before Ross, Carter and Cornelius,* JJ.
Opinion by Justice Cornelius

________________________________________
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N

            A jury convicted Charles Wilson of aggravated assault arising from a melee among inmates
at a prison facility during which Wilson stabbed Charles Warner several times. Wilson's
punishment, enhanced by prior convictions, was set by the jury at fifty years' confinement.
            Wilson's only contention on appeal is that the evidence is legally and factually insufficient
to support the conviction for aggravated assault because it does not show that the injuries suffered
by Warner constituted serious bodily injury.
            A person commits aggravated assault if the person commits an assault and the person causes
serious bodily injury to another. Tex. Pen. Code Ann. § 22.02(a)(1) (Vernon Supp. 2004). Serious
bodily injury is defined as, among other things, bodily injury that creates a substantial risk of death. 
Tex. Pen. Code Ann. § 1.07(a)(46) (Vernon Supp. 2002).
            In a criminal case, the evidence is legally sufficient to support the conviction if, viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307
(1979). The Texas Court of Criminal Appeals recently refined the standard for reviewing factual
sufficiency. In Zuniga v. State, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim.
App. Apr. 21, 2004), the court held that, when an appellant challenges the factual sufficiency of the
evidence, the reviewing court must determine whether, considering all the evidence in a neutral light,
the jury was rationally justified in reaching its verdict beyond a reasonable doubt. Id. There are two
ways in which the evidence may be factually insufficient. First, the evidence supporting the verdict,
if considered alone, may be too weak to support the jury's finding beyond a reasonable doubt. Id. 
Second, if—when weighing the evidence supporting and contravening the conviction—the reviewing
court concludes the contrary evidence is strong enough that the state could not have met its burden
of proof, then the evidence must be held to be insufficient. Id. "Stated another way, evidence
supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, the reviewing court must
reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim.
App. 1996). 
            The determination of whether injuries constitute serious bodily injury as defined by the
statute must be made on an ad hoc basis. Moore v. State, 739 S.W.2d 347, 352 (Tex. Crim. App.
1987); McCoy v. State, 932 S.W.2d 720 (Tex. App.—Fort Worth 1996, pet. ref'd). And, in
determining this issue, the relevant inquiry is the extent of the injury as inflicted, not after its effects
have been ameliorated by medical treatment. Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim. App.
[Panel Op.] 1980); Barrera v. State, 820 S.W.2d 194, 196 (Tex. App.—Corpus Christi 1991, pet.
ref'd).
            According to the medical testimony, Warner had six penetrating stab wounds to his lower
chest and abdomen, which affected his heart, spleen, liver, and intestines. His heart had fluid around
it, probably due to a stab wound. His spleen was injured by a stab wound. His liver appeared to
have been injured by one of the stab wounds, and other areas of his abdomen had distortion and
abnormalities probably related to the stab wounds. After the injuries, Warner was first taken to the
emergency unit at the prison and later was transferred to a hospital and placed in the intensive care
unit. He stayed in intensive care for some twenty-four hours. The doctors considered surgery, but
after observing Warner carefully for awhile, they decided not to do surgery unless his condition
worsened. He was given antibiotics, and after four days was returned to the prison.
            Wilson contends there is legally and factually insufficient evidence to show that Warner
received serious bodily injuries. He makes this contention primarily because some of the medical
testimony was that Warner's injuries could cause a substantial risk of death, not that they did cause
such a risk. We reject this contention. Together with all the other evidence, there is specific and
direct evidence from Dr. Norris that Warner suffered life-threatening injuries that created a
substantial risk of death. Dr. Norris testified in part as follows:
            [ON DIRECT:]
 
Q. . . [W]ithout the medical intervention that y'all performed for
Mr. Warner, was there a--in your opinion was there a substantial risk of death if he
had not been treated and seen by a doctor?
 
AThe wounds that he sustained were in the areas of significant vital
function. The heart, the lungs, abdominal--intra-abdominal structures that if they had
actually had significant injuries, would have created a life-threatening situation for
him.
 
. . . . 

            [ON CROSS:]
 
AThere was blood in the pericardial cavity, which is the cavity that
contains the heart. One millimeter more, it would have been in the heart. That's a
significant injury.
 
. . . . 
 
QIt wasn't a life-threatening injury.
 
AIt was a potential life-threatening injury, . . . .
 
. . . .
 
                        Q         Because it was not one millimeter more, it wasn't an injury that
presented a substantial risk of death.
 
AThat's your interpretation, but that's not a medical interpretation.
 
                        Q         Well, we're talking about legal . . .
 
AThat's fine. You can talk legal all you want, but medically, he had a
life-threatening injury.
 
. . . .

            [ON RE-DIRECT:]
 
QDoctor Norris, one last little thing. One of the last questions you
answered to Mr. Nash, is it your opinion that Mr. Warner on that day and on that
occasion was an extremely lucky individual?
 
AYes.
 
QSomebody else standing in the same place as Mr. Warner potentially
could have died from those injuries?
 
AI have had many other patients in the same circumstances who were
seriously injured or did die from those circumstances.

            We find that the jury could have rationally found from all this testimony that Warner suffered
injuries that created a substantial risk of death. We thus conclude there is legally and factually
sufficient evidence to support the conviction. See, e.g., Hart v. State, 581 S.W.2d 675 (Tex. Crim.
App. [Panel Op.] 1979); Boney v. State, 572 S.W.2d 529 (Tex. Crim. App. [Panel Op.] 1978);
Garcia v. State, 17 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 1999, no pet.).
            For the reasons stated, we affirm the judgment.



                                                                        William J. Cornelius*
                                                                        Justice


*Chief Justice, Retired, Sitting by Assignment

 
Date Submitted:          April 29, 2004
Date Decided:             June 24, 2004

Publish



n the testimony of the victim than on
the testimony of the outcry witness, when there are no other corroborating witnesses and the outcry
witness is the mother of the victim and the outcry statement is detailed, it is difficult to say that the
jury would not place great weight on the outcry witness's testimony. Additionally, the State did not
emphasize the hearsay testimony in closing arguments, mentioning it only to say: "She told her
mother. She told the authorities, and now she has told you." However, the State did emphasize the
outcry testimony by introducing it to the jury first, placing it in a position to influence the jury from
the beginning of the trial. Further, the pieces of testimony that the court erred in admitting into
evidence were not statements made by the declarant regarding the circumstances around the indicted
offense, but were statements describing acts of indecency with a child other than those alleged in the
indictment. Finally, there is no evidence in the record that Davidson had actual notice of the content
of the outcry witness's testimony, as there was in both Norris and Biggs. In Biggs, the prosecution
told the trial court that the state's files contained the outcry witness's statement to the police. Biggs,
921 S.W.2d at 285. 

 The court in Biggs also considered the defendant's failure to claim surprise or ask for a
continuance. Id. Davidson never explicitly claimed to be surprised and did not ask for a
continuance, but he did object that the testimony was not in the summary.

 Davidson objected to only part of the outcry testimony. After the objection was overruled,
Walraven went into detail about the outcry statement made by A.W., adding that Davidson had made
her look at "dirty" magazines, that A.W. had seen "gooey stuff" come out of Davidson's penis "a
bunch of times," that this happened "all the time," and repeating that Davidson had had oral sex with
A.W. Davidson did not renew his objection, and he had not requested a running objection; therefore,
Davidson did not preserve error as to this further testimony. See Ethington v. State, 819 S.W.2d 854,
858 (Tex. Crim. App. 1991); Hitt v. State, 53 S.W.3d 697 (Tex. App.-Austin 2001, pet. ref'd). 
A.W.'s testimony corroborated Walraven's testimony, except for the mention of oral sex, which
Davidson waived when he failed to object to it the second time it was mentioned. Based on a review
of these factors, we cannot say that the court's error in admitting the outcry witness's objected-to
testimony, which was beyond the scope of the summary, had a substantial and injurious effect or
influence on the jury's verdict. Therefore, the error was harmless. This point of error is overruled. 

 Finally, Davidson contends that based on the time, content, and circumstances of the
purported outcry, there were no indicia of reliability, and the trial court erred in admitting the
testimony. The State suggests that Davidson's objections were not sufficient to preserve this issue
for appeal. While Davidson did not make a general hearsay objection or use the term reliable, his
objections that the testimony was not spontaneous, was coerced by the mother, and was outside the
scope of the summary were sufficient to put the court on notice that he was objecting, in part, to the
unreliability of the outcry statement. 

 Davidson did not challenge the reliability of the outcry statement during the hearing held
outside the presence of the jury. At the time of Davidson's objection to the reliability of the
statement, Walraven had testified to the circumstances surrounding the outcry statement. The State
had laid the predicate of reliability, and the burden was on Davidson to demonstrate that the
statement was unreliable. By not requesting that the court hold a hearing outside the presence of the
jury to determine the issue of reliability, Davidson waived that requirement. By overruling
Davidson's objection regarding reliability, the court demonstrated its finding that it found the
statement was reliable considering the circumstances in which it was made. The court's decision that
the statement was reliable is reviewed for abuse of discretion. Reed, 974 S.W.2d at 841.

 The determination of whether the outcry testimony is reliable must be made on a case-by-case
basis. 

 Indicia of reliability that the trial court may consider include (1) whether the
child victim testifies at trial and admits making the out-of-court statement, (2)
whether the child understands the need to tell the truth and has the ability to observe,
recollect, and narrate, (3) whether other evidence corroborates the statement, (4)
whether the child made the statement spontaneously in his own terminology or
whether evidence exists of prior prompting or manipulation by adults, (5) whether
the child's statement is clear and unambiguous and rises to the needed level of
certainty, (6) whether the statement is consistent with other evidence, (7) whether the
statement describes an event that a child of the victim's age could not be expected to
fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the
child has a motive to fabricate the statement, (10) whether the child expects
punishment because of reporting the conduct, and (11) whether the accused had the
opportunity to commit the offense. 


Norris, 788 S.W.2d at 71, citing Buckley v. State, 758 S.W.2d 343-44 (Tex. App.-Texarkana 1988,
no pet.), aff'd, 786 S.W.2d 357 (Tex. Crim. App. 1990).

 Walraven's testimony indicated that the outcry statement was not made spontaneously and
that Walraven prompted and encouraged A.W. to tell Walraven what secret she was keeping with
Davidson. However, it did not show that Walraven prompted A.W. as to the substance of the outcry
statement. There was no evidence that A.W. had any motivation to accuse Davidson of a crime. 
Additionally, Walraven's use of the phrase "oral sex" may have been Walraven's wording
summarizing what her daughter had described. There is no evidence that the outcry statement was
not made in A.W.'s own terminology without manipulation or prompting by Walraven as to its
substance. The circumstances suggested that A.W. was afraid to tell her mother what had happened,
perhaps fearing punishment. Finally, Walraven's earlier testimony regarding Davidson's role as
babysitter had established that Davidson would have had the opportunity to commit the offenses
involved in the outcry testimony.


 Thus, given the information that was before the court at the time the court made the ruling,
the record does not show that the court abused its discretion in finding that there were sufficient
indica of reliability regarding the time, content, and circumstances of the statement for the statement
to be admissible. This point of error is overruled. 

 The judgment of the trial court is affirmed. 




 Ben Z. Grant

 Justice


Date Submitted: March 12, 2002

Date Decided: June 4, 2002


Publish