## J. W. WINDHAM v. THE STATE.

No. 7073. Decided December 13, 1922.

Rehearing Denied February 21, 1923.

**1.—Assault to Murder—Conclusion of Witness—Rule Stated.**

A practicing physician who has examined and described the wound may express an opinion as to the probable cause, nature and effect of the wound, and the consequences thereof, and this does not come under the rule that a physician cannot express an opinion as to whether or not the person who shot the deceased was on horseback or some other elevation as announced in Cooper v. State, 23 Texas, 335.

**2.—Same—Physician—Expert Opinion.**

Where, upon trial of assault with intent to murder, the physician who had qualified as an expert testified that when he examined the party injured and dressed his wound, etc., he thought at the time that the skull was fractured and believed it to be so, there was no reversible error, although the skull was not in fact fractured.

**3.—Same—Evidence—Leading Question.**

Where objection was urged to a question as leading but in the absence of antecedent evidence illustrative of the ruling complained of, there is no reversible error.

**4.—Same—Evidence—Other Testimony.**

In view of other testimony being admitted without objection, which conveyed to the jury the same information as was conveyed by the answer of the witness complained of, there is no reversible error. Following Charles v. State, 85 Texas Crim. Rep., 534, and other cases.

**5.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder, the facts in evidence were in such close juxtaposition to the main fact to be established as to be equivalent to direct testimony, there was no error in the court's failure to charge on circumstantial evidence. Following Anderson v. State, 85 Texas Crim. Rep., 411, 213 S. W. Rep., 639, and other cases.

**6.—Same—Serious Injury—Aggravated Assault—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder and a conviction of aggravated assault, there was sufficient evidence to support the finding of

the jury that the injury was serious and to show the guilt of the defendant, there was no reversible error, and the penalty being within the statutory limitations defendant could not complain.

### 7.—Same—Rehearing—Conclusion of Witness.

That the physician was permitted to testify that he thought at the time that the skull was fractured and believed so at the time, and there was no denial of the right to cross-examine the witness that the physician's examination of the patient was not thorough, there is no reversible error.

### 8.—Same—Words and Phrases—Opinion of Witness.

The word "addled" is a word of established usage, and there was no reversible error in permitting a witness to use the word, and testify that when he picked up the injured party that he was so addled that he could not get up.

Appeal from the District Court of Jones. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of aggravated assault; penalty, a fine of $500.00 and two years confinement in the county jail.

The opinion states the case.

*Stinson, Coombes & Brooks,* for appellant. On question of conclusion of witness, Warren v. State, 9 Texas Crim. App., 629.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Charged with assault with intent to murder, appellant was convicted of aggravated assault; punishment fixed at a fine of $500 and confinement in the county jail for a period of two years. The injured party was C. C. Ball.

Doctor Arwood, a physician of thirty-five years practice, saw Ball immediately after he received the injury. He said: "The wound was on the back part of the skull a little to the right of the spinal column, where the head and spinal column join. The wound was bleeding and I dressed it. It was my diagnosis that he was struck with an instrument of some kind. I don't know what kind, but it cut a pretty deep gash. *When I dressed the wound, I shaved the hair off and found it cut to the skull. I thought at the time the skull was fractured, and I believed it was at the time.* I suppose that the wound was something like an inch and a half long, it was a little diagonal one way but it was lacerated to the skull. I continued to treat him and attended him every day for a week or more, maybe a month."

Objection to that part of the testimony which is italicized was urged for the reason that it was a conclusion of the witness and not a statement of the facts, and led the jury to believe that the injured party had received a fractured skull. We understand that a physician who has examined and described the wound may express an opinion as to the probable cause, nature and effect of the wound and the conse-

quences thereof without violating the rules of evidence. Branch's Ann. Tex. Penal Code, Sec. 1853; Wharton's Crim. Evidence, Vol. 1, p. 839; Waite v. State, 13 Texas Crim. App., 180; Shelton v. State, 34 Texas Crim. Rep., 662; Tolston v. State, 88 Texas Crim. Rep., 261; Tolston v. State, No. 6962, recently decided. The testimony complained of apparently was well within the scope of the law permitting an expert witness to state his opinion. His testimony was not an opinion of the class involved in the case of Cooper v. State, 23 Texas, 335. In that case the witness was permitted to state his opinion as to whether or not the person who shot the deceased was on horseback or some other elevation. That character of opinion has often been rejected. A list of cases is found in Rose's Notes on Texas Decisions, 1910 Edition, Vol. 1, pages 971 and 972. The principle was applied in the Tolston case, 88 Texas Crim. Rep., 261.

Bill No. 3 complains that while the witness Thomasson was testifying, State's counsel propounded the question: "Q. After you picked him up, what did you do with him, hold him or lay him down, or what? A. Well, he didn't—he was in such an addled condition he couldn't get up."

The objection urged was that the question was leading and the answer was a conclusion, causing the jury to conclude that the wound received was more serious than the facts justified. The antecedent evidence illustrative of the ruling complained of is not set out. Looking to the statement of facts, it appears that Doctor Arwood testified, without objection, that he was at the church or meeting when the assault took place; that he heard somebody say that Ball was hurt, that somebody had knocked him in the head; that he went to the place and found Ball standing close to the door. He was on his feet; somebody had helped him up and was holding him. The witness said: "I examined his head and found a wound. I told them to take him up to the office as quick as they could get him there and they carried him up to the house and I dressed the wound."

The witness Ball testified that after the appellant struck him, for a few seconds, though he did not know how long, he turned blind and fell, but that he did not know what occurred, next after he had fallen; that the first he did know or remember was that when Thomasson came to him, he held him up and helped him; that after a short time he went home. Thomasson testified that he came out of the church and saw Ball lying at the steps; that he went to him. The witness said. "I picked him up. He was in such an addled condition he could not get up."

It is claimed by the State that the expression "he was addled" would come within the exception to the rule excluding opinion testimony which allows the receipt of evidence which is but a shorthand rendition of facts or which is mere descriptive of the appearances. A list of cases on this subject is found in Branch's Ann. Tex. Penal Code, Sec. 123.

Under these rules, it has been held permissible to say that "He was mad," Owen v. State, 52 Texas Crim. Rep.; 69; "He was excited," Miller v. State, 18 Texas Crim. App., 259; "He was drunk," Stewart v. State, 38 Texas Crim. Rep., 627. Whether the State's contention is accurate or not, we deem unimportant in view of the other testimony coming without objection, which conveyed to the jury the same information as was conveyed by the answer of the witness complained of. Ball's testimony that he turned blind and did not remember what occurred; the doctor's testimony that they were holding him up, that upon his orders Ball was carried to his office, and other facts which have been adverted to above; bring the matter within the rule that the introduction of improper evidence ordinarily does not require a reversal where the same fact is proved without objection. Upon this subject, see Rogers v. State, 26 Texas Crim. App., 404; Wagner v. State. 53 Texas Crim. Rep., 306; Charles v. State, 85 Texas Crim. Rep., 534.

The refusal of the court to charge on the law of circumstantial evidence is made the subject of complaint. The appellant and Ball were at a gathering at a church in the night-time. Ball was struck just after he left the church. A number of people, including appellant, were present. He testified and denied the assault. The witness Baucum, who knew both the appellant and Ball, said that he was standing near the door of the church and a man whom he did not recognize passed out; that appellant stepped out behind the man and struck him, and the man fell. The witness had a child in his arms and took several steps away, and on returning found that Ball had been struck. On the trial he said: "I recognized the man who struck Ball and ran; it was Mr. Windham."

The witness, Ruda Thompson, was acquainted with both parties. He said: "I got in the car and we started to back around and got the lights almost on the north door of the church house and then I saw another figure and then I saw the motion of the hand and that one fall and then that other figure run, went around the northwest corner of the house. The man that fell, I think, he was on the step of the north door. The man that ran went to the northwest corner of the building. I could not, from where I was, recognize either of the parties, the one that fell or the one than ran, I could just tell it was two figures."

By direct evidence it was shown that both Ball and appellant were present at the church when the assault took place; that appellant stepped out immediately in front of another man, allowed the man to pass him, and as he did so, struck him and ran; that the man who was struck fell at once and a moment later was identified as Ball. The only matter left for inference is the identity of the man whom appellant struck. Would the fact that at the moment of the blow the witness who identified appellant as the assailant, did not recognize the injured party, require a charge on the law of circumstantial evidence? The facts are somewhat similar to those related in Holt's case, 9 Texas Crim. App.,

582. Holt was seen to approach a house occupied alone by Beard. An instant later shots were fired in the house, a moment after which Holt came out of the house; witnesses entered the house and found Beard dead from recent gun-shot wounds. This was held, strictly speaking, not a case of circumstantial evidence, though no one saw the accused or deceased at the immediate time. Following Holt's case, it has been said on several occasions that the facts proven may be in such close juxtaposition to the main fact to be established as to be equivalent to testimony. Branch's Ann. Tex. Penal Code, Sec. 1874. These cases are listed in Anderson's case, 85 Texas Crim. Rep., 411, 213 S. W. Rep., 639, and attention is directed to the fact that some of them do not illustrate the rule stated for the reason that in them there was diretc evidence of the main facts. Apparently, in the instant case there is direct evidence that the appellant struck the blow that injured Ball. If that be questionable, however, it seems manifest that the principle announced in Holt's case, supra, controls, and that the court was not in error in refusing to charge on circumstantial evidence. From the testimony of both the doctor and the injured party, the jury was warranted in concluding that the injury was serious. From the testimony of the doctor it appears that the injured party was confined to his bed for a week or more, and that for three weeks or a month he was not able to do anything though he was out of bed. During the entire time, the doctor treated him. He also testified that, from his examination of the wound he considered it a dangerous one. Ball testified that he was in bed for about ten days; that he became unconscious and turned blind immediately after receiving the blow; that he did not know when he fell; that he did not regain consciousness until help reached him; that at the time of the trial he still suffered pain at times from the injury. There being sufficient evidence to support the finding of the jury that the injury was serious and to show the guilt of the accused, the assessment of the penalty within the statutory limitations, is left by law to the jury. As expressing the views of this court in the instant case, we take the following quotation from a recent decision:

"It was said by this court in Teague v. State, 4 Texas Crim. App., 147, in which a verdict of one year's imprisonment and $800 fine was rendered in a case of aggravated assault:

'The law having prescribed the bounds to which and beyond which the jury may or may not go in affixing the punishment, and having also charged juries with this duty of affixing the punishment, within the limits prescribed, we do not feel warranted in disturbing a verdict on these grounds as set out in the motion. To do so would be to usurp the powers confided to the jury, unless in a clear case of abuse of their powers. . . .'

The same view is expressed in Smith v. State, 7 Texas Crim. App., 414; Handy v. State, 46 Texas Crim. Rep., 407, and numerous others, see Harris' Texas Constitution, p. 115. The instances in which the

court has felt authorized to depart from this rule are rare and the conditions extreme. Generally speaking, where the conviction is legal and the punishment within the terms of the statute, its modification is left by the court to the executive department, in which there is vested authority to diminish the punishment without overturning the conviction, an authority not possessed by the courts." (Wagner v. State, 87 Texas Crim. Rep., 48.)

We find nothing in the record to warrant a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

### ON REHEARING

#### February 21, 1923.

LATTIMORE, JUDGE.—Appellant makes two contentions. He insists that we erred in holding admissible the testimony of Dr. Arwood that when he dressed the wound of the injured party and shaved the hair off his head and found the scalp cut to the skull, that said witness was permitted to testify as follows: "I thought at the time the skull was fractured and I believed it was at the time." We have been unable to arrive at a different conclusion regarding this matter than as expressed in our original opinion. The witness was a physician versed and skilled in his profession and as far as is reflected in the bill of exceptions, had made a thorough and complete examination of the wound. This would appear to be customary in such cases, and there is nothing in the bill of exceptions showing to the contrary. If a physician examines a wound upon the head and states that in his opinion the skull was fractured, it is clear there could be no objection to his stating such fact. This witness did state that when he examined the head of the injured party that he thought at the time that the skull was fractured. The bill of exceptions does not show that appellant was denied any right to cross-examine said witness to ascertain that his examination of the patient was not thorough, and that his situation was such that he was not able to give the testimony objected to.

Appellant's other contention is that the witness who picked the injured party up at the time he was struck on the head, was allowed to say that he was so addled that he could not get up. The use of the word "addled" seems to be the principal ground of objection. We see nothing in this contention. That witness might state that a party whom he picked up, was drunk, or unconscious, or sick, would seem well within the rules. The word "addled" is a word of established usage, and while not a common as those just mentioned, has a well defined meaning such as stupid, muddled, foolish, etc.

We regret our inability to agree with the earnest insistence of appellant in either of the matters complained of.

The motion for rehearing will be overruled.

*Overruled.*