**Elmer Jack BONEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54891.**

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 27, 1978.

Appellant's Motion for Rehearing En Banc Denied Nov. 8, 1978.

Marvin O. Teague, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Ned B. Morris, Asst. Dist. Attys., Houston, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of aggravated assault. V.T.C.A., Penal Code, Sec. 22.02. Punishment was enhanced pursuant to V.T.C.A., Penal Code, Sec. 12.42(d) and assessed at life imprisonment.

The evidence adduced at trial revealed that on April 4, 1975, Betty Jane Outlaw owned and operated an antique shop. At approximately 4:40 p. m. on April 4, the appellant entered this shop while witness Outlaw was alone. The appellant asked if she had "any green cabbage rose," an antique glass. After checking, she told the appellant she did not have any such glass. The appellant then inquired about a certain plate and she testified concerning the subsequent events as follows:

"Well, as he had asked me about this green plate laying in the back and he asked what pattern it was. I said that I didn't know and that I would have to go and look. So I went back to pick up the plate to see what pattern it was and as I picked it up, well, he put his arm around my shoulder and grabbed this arm and said, 'I want you to go—come in here with me.' And I said, 'What do you mean?' And he said, 'I want you to come in here with me.' Which indicated a little office, a little seperate (sic) room and I said, 'No.' And I started to hollering and trying to get away and we was standing right by the back door and I grabbed the door knob to try to pull myself away *from him. I just opened the door and* started to go out the back door and as I ran out the back door, well, I just felt like maybe he was trying to pull me back and I was running out the back door. As I got away from him and ran out into this little back yard, I felt this wetness and I looked down and I had blood all down on my clothes."

After witness Outlaw ran outside, the appellant did not follow. She saw the appellant get into his car and she noted the license plate number as he left. Outlaw stated that she did not observe a knife, razor or anything in appellant's hand but had a cut from the front of her neck around to the back of her head. She stated that the blood "gushed" rapidly from that wound. Due to her injury, she stayed overnight in the hospital and received several stitches. On cross-examination, it was established that the appellant did not threaten her with harm nor did she see a weapon of any kind.

W. T. Smith testified that he owned a business located less than half a block from Outlaw's antique store. Smith went to her store in the late afternoon of April 4, 1975, and when she opened the door Smith saw her holding her neck and noticed she was bleeding. Smith stated that there was blood "all over on her neck and her blouse was bloody and looked like it was bleeding kind of bad." Smith procured a towel and stayed with witness Outlaw until the police arrived.

Steven Whitney testified that on April 4 he was across the street from Outlaw's antique shop. From Whitney's vantage point, he could see the backyard of the antique shop. On that afternoon, he observed Betty Outlaw run out of the back door to the antique shop, screaming. Whitney observed a man run after her, but he did not come completely through the door. Whitney identified the man as the appellant.

Doctor Cleveland Purdue testified that he treated Betty Outlaw on April 4 for a laceration on the right side of her neck, measuring approximately 8½ inches. Purdue stated that the cut severed the superficial jugular vein and that a person could go into shock from loss of blood from this vein. He stated that Outlaw's injury was a quarter of inch deep. In Purdue's opinion, it would take a relatively sharp instrument to cause such a laceration. Purdue also testified, in part, as follows:

"Q [By the prosecutor] Okay. Now, doctor, would a wound like this in your medical opinion be a wound

that could cause a substantial risk of death to a person?

A Yes."

Further, on cross-examination Dr. Purdue testified:

"Q [By appellant's trial counsel] You stated that in a wound such as this if it went unattended that there's a possibility a person could go into shock?

A Yes, sir.

Q And isn't it true, doctor, that if any of us looses a requisite amount of blood, however amount it takes, we could go into shock regardless of how we loose it?

A Yes, sir.

Q And I guess if you stayed in shock long enough you could die?

A Yes, sir."

Doctor Purdue stated that the laceration was too large for surgery in the emergency room and surgery had to be performed in the operating room. The laceration required 23 stitches.

Officer J. P. Powell testified that on April 4, 1975, he went to Outlaw's antique shop. When he arrived, Outlaw ran out to meet him and he observed she was covered with blood, holding the right side of her neck. Powell stated her wound "appeared to be a vicious knife wound of some kind."

Officer Michael Morton testified that on April 4 he received information concerning the offense, a description of the car, and the license plate number. Morton noticed a car meeting the description and license plate number at approximately 5:30 p. m. and pulled the car over to the side of the road. Morton stepped out of the police car and placed his hand on his pistol, without drawing it. At that time, the appellant jumped back into his car and drove across a pasture into a residential area. After driving between two houses, the appellant drove back onto the highway. After Morton finally stopped appellant, he placed appellant under arrest.

Officer J. W. Glenn testified that he went to the antique shop at approximately 5:10 p.

m. on April 4. Glenn saw blood near the back door of the shop but did not see any broken glass. This testimony was also corroborated by Officer Glenn Rosier.

Detective P. J. Kuehn stated that he went out to the scene where Officer Morton finally stopped appellant. Kuehn noticed that there appeared to be blood on the steering wheel of the car, and Kuehn noticed a bag of clothing which had been found three feet from the appellant's car. A subsequent search of the appellant and the appellant's car failed to reveal any weapons.

Bob Urbanovsky, a chemist with the Texas Department of Public Safety, testified that he examined the clothing found near appellant's car and the steering wheel. Urbanovsky testified that he found blood on the pants and the left shoe of the clothing but did not find blood on the shirt. He also found blood on the steering wheel. He stated that there was not a sufficient amount of blood in order to determine the blood type or to determine whether the blood was human blood.

Doctor Max Roth, called to testify on behalf of the defense, testified that he treated the appellant from December 10, 1974, to March 19, 1975, for a lower back strain. Roth stated that he prescribed a medicine which might tend to make a person dizzy. Appellant sought to show by this testimony that this dizziness was the reason he placed his arm around witness Outlaw.

J. C. Livingston, the appellant's stepfather, stated that on April 1 the appellant purchased an antique creamer and sugar bowl, with a cabbage design. The sugar bowl did not have a top. It was stipulated by the State that the appellant needed a replacement top for the sugar bowl, having purchased such at a garage sale.

■ In his second ground of error, the appellant contends that the evidence was insufficient to support the conviction. Specifically, the appellant contends that the evidence failed to show that Betty Outlaw sustained serious bodily injury as defined under V.T.C.A., Penal Code, Sec. 1.07(a)(34).

V.T.C.A., Penal Code, Sec. 1.07(a)(34) provides:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Appellant contends that Dr. Purdue's statement that in his opinion such a wound as that suffered by the complainant *could* cause a substantial risk of death to a person was more of a hypothetical rather than an actual situation. We find appellant's contention without merit.

It was established that the laceration was a quarter of an inch deep, 8½ inches in length. Such cut severed the superficial jugular vein and blood was "gushing" from that laceration. Several witnesses stated that Betty Outlaw was covered with blood. Doctor Purdue testified that such a wound could cause shock which could result in death and that such a wound could cause a substantial risk of death to a person. We find this evidence sufficient to sustain the conviction. See *Windham v. State,* 93 Tex. Cr.R. 477, 248 S.W. 51; *Limuel v. State,* 568 S.W.2d 309 (Tex.Cr.App.), delivered May 3, 1978; cf. *Sanchez v. State,* 543 S.W.2d 132 (Tex.Cr.App.). Appellant's contention is overruled.

 In his first ground of error, the appellant contends that the indictment is fundamentally defective for failing to allege criminal offense. The relevant portion of the indictment alleges that the appellant:

" . . . on or about April 4, 1975, did then and there unlawfully commit an offense hereafter styled the primary offense, in that he did intentionally and knowingly cause serious bodily injury to Betty Jane Outlaw. . . .."

As a general rule, an indictment in the language of the statute creating and defining the offense charged will be sufficient. *Neill v. State,* 225 S.W.2d 829 (Tex.Cr. App.); *Lopez v. State,* 494 S.W.2d 560 (Tex. Cr.App.); *Mears v. State,* 557 S.W.2d 309 (Tex.Cr.App.). V.T.C.A., Penal Code, Sec. 22.01 provides, in part:

"(a) A person commits an offense if he:
(1) intentionally, knowingly, or recklessly causes bodily injury to another;
. . . ."

V.T.C.A., Penal Code, Sec. 22.02 provides, in part:

"(a) A person commits an offense if he commits assault as defined in Section 22.01 of this code and he:
(1) causes serious bodily injury to another; . . . ."

Consequently, the elements of the offense under Sec. 22.02(a)(1) are: (1) a person (2) intentionally, knowingly, or recklessly (3) causes serious bodily injury to another. See *Teal v. State,* 543 S.W.2d 371 (Tex.Cr.App.). An indictment for aggravated assault need not allege the manner and means used to commit the assault as such is not an element of the offense but relates only to the certainty and definiteness required to enable the defendant to reasonably understand the nature and cause of the accusation against him. *Eanes v. State,* 546 S.W.2d 312 (Tex.Cr.App.); see also *Acree v. State,* 158 Tex.Cr.R. 463, 257 S.W.2d 107. In the instant case, the indictment tracks the statute and is sufficient to charge an offense against the laws of this State. We therefore hold that the indictment was sufficient, absent a motion to quash, to charge an offense under V.T.C.A., Penal Code, Sec. 22.02(a)(1). Appellant's contention is overruled.

We have examined the appellant's pro se brief and find that his contentions are without merit and the same are hereby overruled.

The judgment is affirmed.