# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-0000638-CR

**Jeffrey Jerome Washington, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 620569, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jeffrey Jerome Washington appeals a judgment convicting him of aggravated assault. *See* Tex. Pen. Code Ann. § 22.02(a)(1) (West 2003). Appellant argues that the county court, in a bench trial, erred by: (1) allowing a fatal variance between the State's pleading and proof; (2) basing its conviction on evidence that is factually insufficient; and (3) allowing hearsay statements to be admitted into evidence. We affirm the judgment of the trial court.

## BACKGROUND

Appellant was visiting Bobby Jean Wallace, his mother, and Theodore Maxwell, a family friend, at Wallace's house on the evening of September 11, 2002. At some point, appellant

and Wallace began to argue. Shortly after the argument, Wallace's granddaughter, who was in the house but did not witness any of the events, called EMS. When Officers Ray Tynes and Alvin Roden arrived about five minutes later, they found Wallace crying and upset, unclothed from the waist up, and bleeding from two large wounds on her back. Appellant had already left. Wallace told Officer Tynes that during an argument with appellant, appellant hit her in the back with a broken glass, causing her wounds. After speaking to Wallace, Officer Tynes notified dispatch to send EMS to the scene. While waiting for EMS to arrive, he took photographs of Wallace's injuries and searched the scene for the weapon that caused the injuries. Although he did not find a weapon, he did notice pieces of broken glass lying on the carpet about a foot from the couch. After EMS arrived, Officer Tynes prepared an assault victim statement at the scene with the help of Wallace, but when he asked her to sign it she began crying and refused to do so.

Approximately five minutes after Officer Tynes called dispatch for EMS, paramedic David Curvin arrived and found Wallace still partially unclothed, crying, and upset. Curvin treated her wounds. One wound was four to five inches long, an inch and a half wide, and an inch deep—almost to the shoulder blade. The other was two to three inches long. Wallace stated to Curvin that she had been cut while in a fight with a man, but she did not identify him.[1]

At trial, Wallace and Maxwell gave a different account of the events. They testified that appellant became enraged and threw a drinking glass at Maxwell, who was sitting on a couch with Wallace. The glass hit the wall next to Maxwell and shattered, sending broken shards of glass

---

[1] Curvin testified that Wallace told him "He cut me; we were in a fight," although he also testified that he was not sure of her exact words.

flying towards Wallace and causing her injuries. Wallace testified that the glass left a dent in the wall, and Maxwell described the dent as an inch long and a half-inch deep. Wallace denied having any dispute with appellant and denied arguing with him that evening. Maxwell, on the other hand, acknowledged that Wallace and appellant had "some words." Wallace acknowledged speaking to the paramedics but denied speaking to the police officer. Wallace denied that appellant ever struck her.[2]

The testimony of both Curvin and Officer Tynes contradicted that of Wallace and Maxwell. Curvin testified that Wallace's wounds could have resulted only from direct force. As he stated, the wounds looked as if "a knife [had been] applied directly to the patient, or something would have had to have [been] thrown directly at them" because the deeper wound started at the top of her shoulder and cut downward. In addition, Curvin did not think that glass "could bounce and cause that kind of damage, not as deep as that cut was." Additionally, Curvin stated that Wallace told him that she had been cut in a fight while he was treating her wounds.

Officer Tynes testified that Wallace told him that she had an argument with appellant over custody of his granddaughter.[3] He testified that Wallace stated at the scene that, after the argument intensified, Maxwell tried to intervene. Officer Tynes further testified that Wallace told him she heard the sound of breaking glass and noticed appellant approaching her. Officer Tynes then testified that Wallace told him that appellant hit her in the back with a glass. He also stated that,

---

[2] Both Wallace and Maxwell also testified that they did not want to see appellant get into any trouble.

[3] The granddaughter who was the subject of the argument is appellant's granddaughter, Wallace's great-granddaughter. She is not the girl who called EMS for help.

3

while Wallace was telling him that appellant had struck her, she motioned with her arm and fist as if to indicate a direct strike. Finally, Officer Tynes testified that the physical evidence at the scene did not match the account that both Maxwell and Wallace gave at trial. Although he did see small pieces of broken glass about a foot from the couch, none of those pieces had blood on them. He did not recall seeing broken glass on the couch or a mark on the wall behind the couch.

## DISCUSSION

### *Admission of Out-of-Court Statements*

Appellant argues that the out-of-court statements made by Wallace and testified to by Officer Tynes and Curvin were hearsay and should not have been admitted as evidence. Hearsay is a statement, not made while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is an exception to the hearsay rule. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing Tex. R. Evid. 803(2)). The critical determination is whether the declarant was still dominated by the emotion, excitement, fear, or pain of the event or condition at the time of the statement. *Id*. at 596. The admissibility of an out-of-court statement under an exception to the hearsay rule is within the trial court's discretion. *Id*. at 595. Therefore, a reviewing court should not reverse unless a clear abuse of discretion is shown. *Id.* An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

4

Here, the record shows that Officer Tynes arrived within five minutes of the altercation and that Wallace spoke with him shortly after his arrival, while she was crying, nude from the waist up, and bleeding from two large wounds on her back. Both Officer Tynes and Curvin testified as to Wallace's condition when they arrived at the house. Furthermore, Curvin's description of the depth and severity of the wounds when he arrived to treat Wallace supports the trial court's conclusion that she was still dominated by the emotion, fear, and pain of the event at the time of her statement. Although appellant argues that the statements ought to be excluded because Wallace's own trial testimony renders her out-of-court statements inadmissable, excited utterances are admissible even though the declarant is available as a witness. Tex. R. Evid 803(2). Thus, because the record supports the trial court's ruling that the statement was admissible as an excited utterance, we cannot say that the trial court abused its discretion in doing so. We overrule appellant's issue concerning the out-of-court statements.

### Factual Sufficiency

Appellant argues in his second issue that the evidence is factually insufficient to support a conviction. In reviewing factual sufficiency, a court asks whether a neutral review of all the evidence, both for and against the finding, demonstrates either that the proof of guilt is so obviously weak as to undermine the confidence of the jury's determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). This review, however, must employ appropriate deference to the fact finder in order to prevent an appellate court from substituting its judgment for that of the fact

finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.* at 7. Appellant argues the first standard above, that the evidence is insufficient to support the finding of a vital fact—that he struck Wallace. When the only evidence presented on the particular element supports the inference that the fact is true, but that evidence is simply too weak by itself to support a rational finding, courts will find the evidence factually insufficient. *Goodman v. State,* 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).

Although Wallace and Maxwell both testified that appellant did not strike Wallace, there are inconsistencies in their accounts of what took place that evening. The testimony of Officer Tynes and Curvin, on the other hand, is in agreement, and their testimony is corroborated by the physical evidence. Wallace stated to both Officer Tynes and Curvin that she had been cut in a fight. Wallace explained what happened in detail to Officer Tynes, stating that appellant struck her from behind with a piece of broken glass, using a downward striking motion with her arm and fist to further illustrate what had happened. Additionally, Curvin testified that the size, location, and depth of Wallace's wound was inconsistent with Wallace and Maxwell's version of the events. Rather, a wound of that size and depth could have been caused only by direct force. Given the great deference that an appellate court must show the finder of fact, particularly when considering the credibility of witnesses, and looking at all the evidence in a neutral light, we are unable to say that the evidence supporting the verdict was so obviously weak as to render the conviction clearly wrong and manifestly unjust. *See Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Appellant's second issue is overruled.

6

*Fatal Variance*

In his first issue, appellant claims that there was a fatal variance between the State's pleading and proof. A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State,* 46 S.W.3d. 243, 246 (Tex. Crim. App. 2001). In a variance situation, the state has proven the defendant guilty of a crime but has proven its commission in a manner that varies from the allegations in the charging instrument. *Id.* The two questions asked in order to determine if a variance exists are (1) whether the indictment, as written, sufficiently informed the defendant of the charge against him to allow him to prepare an adequate defense, and (2) whether prosecution would subject the defendant to the risk of being prosecuted later for the same crime under the deficiently drafted indictment. *Id*. at 257 (citing *United States v. Sprick*, 233 F.3d. 845, 853 (5th Cir. 2000)). A variance is fatal only if it is material and prejudices the defendant's substantive rights. *Id.*

Appellant complains that the evidence proved only that he threw a glass against a wall, which then shattered and caused bodily injury to Wallace. Appellant contends that this is a different offense from the indictment's charge that he "did then and there intentionally, knowingly, and recklessly cause bodily injury to Bobbie Wallace by striking Bobbie Wallace on and about the torso with an object, to wit: a piece of broken glass," and that the difference is material and required to be in the indictment.[4] As a general rule, an indictment that mirrors the language of the statute that creates and defines the offense charged will be sufficient. *Boney v. State*, 572 S.W.2d 529, 532 (Tex.

---

[4] Appellant also argues that he "would have had a good motion to quash" on this issue. However, appellant did not make a motion to quash. As such, the issue was waived. *Eanes v. State*, 546 S.W.2d 312, 313 (Tex. Crim. App. 1977).

Crim. App. 1978).  Further, in an assault indictment, the State need not allege the manner and means used to commit the assault because it is not an element of the offense.  *Id.*  In the case before us, the State's indictment not only tracked the language of the statute, but also specifically identified the means and manner of the offense—a piece of broken glass used to strike Wallace on and about the torso.  Appellant's variance claim is misplaced.  Although more than one version of the events was given at trial, the fact finder was not faced with a variance but simply with a choice of which version of the events to believe.[5]  Because the evidence in this case was sufficient to support a verdict under the indictment, we overrule appellant's first issue.

## CONCLUSION

Because we overrule all of appellant's issues, we affirm the judgment of conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   October 16, 2003

Do Not Publish

_____

[5] Appellant's brief extensively discusses whether Maxwell and Wallace's version of events would justify conviction under a theory of transferred intent or would meet the legal definition of striking.  Because the evidence is factually sufficient to support the conviction on the grounds that appellant physically struck Wallace, we need not address these arguments.