



## MEMORANDUM OPINION

No. 04-09-00220-CR

Jose Hechavarria **VALDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-9978
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Concurring opinion by:    Steven C. Hilbig, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Steven C. Hilbig, Justice

Delivered and Filed: April 7, 2010

AFFIRMED

A jury found appellant Jose Hechavarria Valdez guilty of burglary of a habitation and assessed punishment at life imprisonment. On appeal, appellant asserts the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

# FACTUAL BACKGROUND

Appellant had a relationship with a woman named Sandra Dukes. On August 19, 2006—several months after appellant's relationship with Sandra had ended—Sandra and the man she was then dating, Ronald Oakman, returned to Sandra's home after having gone to dinner. Sandra's front entrance was equipped with a burglar bar door, which locks with a key from either side and which Sandra locked behind her and Ronald on their way in. Once inside, she gathered some clothes so she could stay the weekend at Ronald's. When she was ready to leave, Sandra opened her front door and unlocked the burglar bar door. She then saw appellant through the bars and immediately tried to close the door. Appellant, however, stabbed her twice in the arm through the bars and forced his way into the house. Once inside, he pushed Sandra aside, kicked her while she was on the ground, and began attacking Ronald by stabbing him in the head and in the back. Appellant then went through the house ripping the telephone lines out of the walls. He took Sandra's cell phone, her keys to the house, and Ronald's car keys. Appellant took a few moments to wipe the blood off his arms and hands, locked Sandra and Ronald inside the house on his way out, and left in Ronald's car. Ronald found his cell phone in the couch and managed to called 9-1-1.

The trial court admitted pictures showing Sandra's living room after she and Ronald had been attacked. The pictures showed blood smeared or splattered throughout the living room at various places and on various objects—the front door, the walls, the carpet, the rug, the television, the entertainment center, the couches, clothes, CD cases, bookshelves, bottled drinks, a fan, and a purse. The paramedic who treated Sandra described the scene as having "quite a bit of blood." However, police did not recover the knife used to cut and stab the victims. Sandra stated it was like a "dagger knife" and that it had ridges on both sides. Although she physically indicated its size to the trial

court, no description of her gesture appears in the record. Ronald did not see the knife. Officer Michael Johnson testified he was told the knife was a "butcher/steak" knife.

Both Sandra and Ronald required treatment for their wounds. The paramedic who treated Sandra testified her wounds had already been bandaged when he arrived, and he was informed there was no arterial bleeding. Because he did not want to disturb any blood-clotting by removing the bandages, he did not examine the wounds. He testified his initial exam of Sandra revealed only the wounds to the arm, and such wounds are "not really life-threatening" unless an artery is punctured; however, he stated he thought Sandra's wounds were life-threatening because appellant "might have cut or sliced the artery . . . ." He then testified that Sandra's pulse rate was fast, her blood pressure was low, and, once she was in the back of the ambulance, he noticed she was sweating or diaphoretic, all factors indicating to him that she had lost blood. He testified it is possible to "bleed out" from a cut to the arm and explained that he transported Sandra "Code 3" to the hospital, meaning "with lights and sirens," a designation for life-threatening injuries. He testified Sandra received oxygen treatment and that he unsuccessfully attempted five times to start an intravenous line. However, he indicated it is often more difficult to start IVs on someone experiencing large amounts of blood loss. Upon arrival at the hospital, the paramedic observed hospital staff give Sandra a blood transfusion. She spent a total of two weeks in the hospital. Sandra testified her medial nerve was completely cut in half, which required surgery. She now has difficulty lifting heavy objects and gripping a steering wheel, and she suffers from numbness, tingling, and loss of sensation in the injured arm, rendering her disabled and unable to continue her employment of driving a school bus.

**DISCUSSION**

On appeal, appellant argues the evidence is legally and factually insufficient to support his conviction because the State failed to prove that either (1) the knife used was a deadly weapon or (2) the assault resulted in serious bodily injuries.

We review the legal and factual sufficiency of the evidence under the appropriate standards of review. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (legal sufficiency); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (same); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony; therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).

A person commits first degree felony burglary if he enters a habitation and intentionally, knowingly, or recklessly causes bodily injury to another and either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon when causing bodily injury. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a) (Vernon Supp. 2009), § 30.02(a), (d) (Vernon 2003). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (Vernon Supp. 2009).

Here, the State presented ample evidence indicating that Sandra suffered serious bodily injuries. First, two and a half years after the assault, Sandra testified (1) she had numbness and

tingling in the injured arm, (2) it is hard for her to lift heavy objects or grab a steering wheel for long periods of time, and (3) she no longer has a sensation of touch or hot and cold. Sandra testified that because of her injuries, she is now considered disabled and unable to drive a school bus. Based on Sandra's testimony, we conclude that she sustained protracted loss or impairment of the function of a bodily member, and therefore, she sustained serious bodily injury. *See Botello v. State*, 693 S.W.2d 528, 530 (Tex. App.—Corpus Christi 1985, pet. ref'd) (holding victim's testimony that he could no longer use his hand as well as before he was assaulted is sufficient evidence to show impairment of the function of bodily member).

Second, the paramedic testified Sandra's injury was life threatening. He stated it was possible to "bleed out" from a cut to the arm, and his testimony indicated Sandra had lost large amounts of blood from her wounds because of the signs she was exhibiting: high pulse rate, low blood pressure, and diaphoresis. That the paramedic was unable to establish IV access was consistent with the other indications that she had lost large amounts of blood. His determination that she required immediate "Code 3" transport—a designation for life threatening injuries—indicates he considered her condition to be life threatening. Finally, Sandra received a blood transfusion upon arriving at the emergency room, indicating she was in dire need of blood to replace what she had lost. Based on the paramedic's testimony, we conclude Sandra sustained a substantial risk of death due to blood loss, and therefore, she sustained serious bodily injury. *See Boney v. State*, 572 S.W.2d 529, 532 (Tex. Crim. App. 1978) (evidence that blood loss from wound could cause shock which could cause death is sufficient to establish serious bodily injury).

In sum, the State presented ample evidence to show that the assault resulted in serious bodily injury to Sandra. Therefore, the evidence is legally and factually sufficient to sustain the conviction

based on the theory that appellant entered Sandra's home and intentionally, knowingly, or recklessly caused her serious bodily injury.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do Not Publish