•           •           • 
 • • •





MEMORANDUM OPINION

No. 04-09-00220-CR

Jose Hechavarria VALDEZ,
Appellant

v.

The STATE of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-9978
Honorable Catherine Torres-Stahl, Judge Presiding
 
Opinion by:    Sandee Bryan Marion, Justice
Concurring opinion by: Steven C. Hilbig, Justice
 
Sitting:            Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed: April 7, 2010

AFFIRMED
            A jury found appellant Jose Hechavarria Valdez guilty of burglary of a habitation and
assessed punishment at life imprisonment. On appeal, appellant asserts the evidence is legally and
factually insufficient to support the jury’s verdict. We affirm.
 
 
FACTUAL BACKGROUND
            Appellant had a relationship with a woman named Sandra Dukes. On August 19,
2006—several months after appellant’s relationship with Sandra had ended—Sandra and the man
she was then dating, Ronald Oakman, returned to Sandra’s home after having gone to dinner. 
Sandra’s front entrance was equipped with a burglar bar door, which locks with a key from either
side and which Sandra locked behind her and Ronald on their way in. Once inside, she gathered
some clothes so she could stay the weekend at Ronald’s. When she was ready to leave, Sandra
opened her front door and unlocked the burglar bar door. She then saw appellant through the bars
and immediately tried to close the door. Appellant, however, stabbed her twice in the arm through
the bars and forced his way into the house. Once inside, he pushed Sandra aside, kicked her while
she was on the ground, and began attacking Ronald by stabbing him in the head and in the back. 
Appellant then went through the house ripping the telephone lines out of the walls. He took Sandra’s
cell phone, her keys to the house, and Ronald’s car keys. Appellant took a few moments to wipe the
blood off his arms and hands, locked Sandra and Ronald inside the house on his way out, and left
in Ronald’s car. Ronald found his cell phone in the couch and managed to called 9-1-1. 
            The trial court admitted pictures showing Sandra’s living room after she and Ronald had been
attacked. The pictures showed blood smeared or splattered throughout the living room at various
places and on various objects—the front door, the walls, the carpet, the rug, the television, the
entertainment center, the couches, clothes, CD cases, bookshelves, bottled drinks, a fan, and a purse. 
The paramedic who treated Sandra described the scene as having “quite a bit of blood.” However,
police did not recover the knife used to cut and stab the victims. Sandra stated it was like a “dagger
knife” and that it had ridges on both sides. Although she physically indicated its size to the trial
court, no description of her gesture appears in the record. Ronald did not see the knife. Officer
Michael Johnson testified he was told the knife was a “butcher/steak” knife.
            Both Sandra and Ronald required treatment for their wounds. The paramedic who treated
Sandra testified her wounds had already been bandaged when he arrived, and he was informed there
was no arterial bleeding. Because he did not want to disturb any blood-clotting by removing the
bandages, he did not examine the wounds. He testified his initial exam of Sandra revealed only the
wounds to the arm, and such wounds are “not really life-threatening” unless an artery is punctured;
however, he stated he thought Sandra’s wounds were life-threatening because appellant “might have
cut or sliced the artery . . . .” He then testified that Sandra’s pulse rate was fast, her blood pressure
was low, and, once she was in the back of the ambulance, he noticed she was sweating or
diaphoretic, all factors indicating to him that she had lost blood. He testified it is possible to “bleed
out” from a cut to the arm and explained that he transported Sandra “Code 3” to the hospital,
meaning “with lights and sirens,” a designation for life-threatening injuries. He testified Sandra
received oxygen treatment and that he unsuccessfully attempted five times to start an intravenous
line. However, he indicated it is often more difficult to start IVs on someone experiencing large
amounts of blood loss. Upon arrival at the hospital, the paramedic observed hospital staff give
Sandra a blood transfusion. She spent a total of two weeks in the hospital. Sandra testified her
medial nerve was completely cut in half, which required surgery. She now has difficulty lifting
heavy objects and gripping a steering wheel, and she suffers from numbness, tingling, and loss of
sensation in the injured arm, rendering her disabled and unable to continue her employment of
driving a school bus.
 
DISCUSSION
            On appeal, appellant argues the evidence is legally and factually insufficient to support his
conviction because the State failed to prove that either (1) the knife used was a deadly weapon or (2)
the assault resulted in serious bodily injuries. 
            We review the legal and factual sufficiency of the evidence under the appropriate standards
of review. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (legal sufficiency); Dewberry v.
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (same); Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006) (factual sufficiency); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. 
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). The jury, as trier of fact, is the sole
judge of the credibility of the witnesses and the weight to be given to their testimony; therefore,
reconciliation of any conflicts in the evidence is within the exclusive province of the jury. Mosley
v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).
            A person commits first degree felony burglary if he enters a habitation and intentionally,
knowingly, or recklessly causes bodily injury to another and either (1) causes serious bodily injury
to another or (2) uses or exhibits a deadly weapon when causing bodily injury. Tex. Penal Code
Ann. §§ 22.01(a)(1), 22.02(a) (Vernon Supp. 2009), § 30.02(a), (d) (Vernon 2003). Serious bodily
injury is “bodily injury that creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily member or organ.” Id.
§ 1.07(a)(46) (Vernon Supp. 2009). 
            Here, the State presented ample evidence indicating that Sandra suffered serious bodily
injuries. First, two and a half years after the assault, Sandra testified (1) she had numbness and
tingling in the injured arm, (2) it is hard for her to lift heavy objects or grab a steering wheel for long
periods of time, and (3) she no longer has a sensation of touch or hot and cold. Sandra testified that
because of her injuries, she is now considered disabled and unable to drive a school bus. Based on
Sandra’s testimony, we conclude that she sustained protracted loss or impairment of the function of
a bodily member, and therefore, she sustained serious bodily injury. See Botello v. State, 693 S.W.2d
528, 530 (Tex. App.—Corpus Christi 1985, pet. ref’d) (holding victim’s testimony that he could no
longer use his hand as well as before he was assaulted is sufficient evidence to show impairment of
the function of bodily member). 
            Second, the paramedic testified Sandra’s injury was life threatening. He stated it was
possible to “bleed out” from a cut to the arm, and his testimony indicated Sandra had lost large
amounts of blood from her wounds because of the signs she was exhibiting: high pulse rate, low
blood pressure, and diaphoresis. That the paramedic was unable to establish IV access was
consistent with the other indications that she had lost large amounts of blood. His determination that
she required immediate “Code 3” transport—a designation for life threatening injuries—indicates
he considered her condition to be life threatening. Finally, Sandra received a blood transfusion upon
arriving at the emergency room, indicating she was in dire need of blood to replace what she had
lost. Based on the paramedic’s testimony, we conclude Sandra sustained a substantial risk of death
due to blood loss, and therefore, she sustained serious bodily injury. See Boney v. State, 572 S.W.2d
529, 532 (Tex. Crim. App. 1978) (evidence that blood loss from wound could cause shock which
could cause death is sufficient to establish serious bodily injury).
            In sum, the State presented ample evidence to show that the assault resulted in serious bodily
injury to Sandra. Therefore, the evidence is legally and factually sufficient to sustain the conviction
based on the theory that appellant entered Sandra’s home and intentionally, knowingly, or recklessly
caused her serious bodily injury.
CONCLUSION
            We overrule appellant’s issues on appeal and affirm the trial court’s judgment.
 
Sandee Bryan Marion, Justice
Do Not Publish