PD-0245-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/23/2015 5:11:21 PM
Accepted 7/24/2015 8:16:28 AM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **No. PD-0245-15** |
| | § | |
| **JUAN BLEA** | § | |
| APPELLEE | § | |

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

## STATE'S BRIEF ON THE MERITS

FROM THE SECOND DISTRICT OF TEXAS AT FORT WORTH
IN CAUSE NUMBER 02-13-00221-CR
AND
FROM THE 362ND JUDICIAL DISTRICT COURT,
THE HONORABLE BRUCE MCFARLING, JUDGE, PRESIDING;
THE HONORABLE SHERRY SHIPMAN FROM THE 16TH JUDICIAL
DISTRICT COURT, AS SITTING JUDGE
DENTON COUNTY, TEXAS
IN CAUSE NUMBER F-2011-0993-D

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division

**ANDREA R. SIMMONS**
Assistant Criminal District Attorney
State Bar No. 24053478
1450 East McKinney
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
andrea.simmons@dentoncounty.com

# IDENTITY OF PARTIES AND COUNSEL

Appellant .......................................................**THE STATE OF TEXAS**

**PAUL JOHNSON**
Criminal District Attorney

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division

**ANDREA R. SIMMONS**
Assistant Criminal District Attorney
State Bar No. 24053478
1450 East McKinney
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
andrea.simmons@dentoncounty.com

APPELLATE COUNSEL

**MICHAEL GRAVES**
**DUSTIN GOSSAGE**
Assistant Criminal District Attorneys

TRIAL COUNSEL

Appellee.......................................................**JUAN BLEA**

**JOSEPH BOSWELL**
1504 East McKinney Street
Suite 200
Denton, Texas 76209

APPELLATE COUNSEL

**DENVER McCARTY**
1512 East McKinney Street
Suite 200
Denton, Texas 76209

TRIAL COUNSEL

# INDEX OF AUTHORITIES

**Statutes**

Tex. Penal Code Ann. § 1.07(a)(8) (West 2013) ........................................................ 5

Tex. Penal Code Ann. § 1.07(a)(46) (West 2013) ........................................... 5, 9, 11


**Cases**

*Barrera v. State*
   820 S.W.2d 194 (Tex. App.—Corpus Christi 1991, pet. ref'd) ......................... 8, 9

*Blea v. State*
   No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137
   at *13-14 (Tex. App.—Fort Worth Feb. 5, 2015, pet. field)
   (not designated for publication) .................................................. 8, 9, 12, 13

*Brown v. State*
   605 S.W.2d 572 (Tex. Crim. App. [Panel Op.] 1980) .......................................... 8

*Dewberry v. State*
   4 S.W.3d 735 (Tex. Crim. App. 1999) ............................................................. 5, 13

*Dobbs v. State*
   434 S.W.3d 166 (Tex. Crim. App. 2014) ............................................................. 14

*Hernandez v. State*
   161 S.W.3d 491 (Tex. Crim. App. 2005) ............................................................. 14

*Hooper v. State*
   214 S.W.3d 9 (Tex. Crim. App. 2007) ........................................................ 4, 5, 13

*Jackson v. Virginia*
443 U.S. 307, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979) ....................... 4, 5

*Johnson v. State,*
 No. 05-10-00465-CR, 2011 Tex. App. LEXIS 6208, at *12
 (Tex. App.—Dallas 2011, no pet.) (not designated for publication) ............... 12

*Laster v. State*
 275 S.W.3d 512 (Tex. Crim. App. 2009) ........................................................... 5

*Madden v. State*
 911 S.W.2d 236 (Tex. App.—Waco 1995, pet. ref'd) ...................................... 11

*Moore v. State*
 739 S.W.2d 347 (Tex. Crim. App. 1987) ........................................................... 6

*Nash v. State*
 123 S.W.3d 534 (Tex. App.—Fort Worth 2003, pet. ref'd) ............................... 6

*Patterson v. State*
 No. 11-06-00209-CR, 2008 Tex. App. LEXIS 1525, at *8
 (Tex. App.—Eastland 2008, pet. ref'd) (not designated
 for publication) ................................................................................................. 9

*Pedro v. State*
 No. 01-88-00197-CR, 1988 WL 139708, at 82 (Tex.
 App.—Houston [1st Dist.] Dec. 22, 1988, no pet.)
 (not designated for publication) ....................................................................... 9

*Sizemore v. State*
 387 3d 824 (Tex. App.—Amarillo 2012, pet. ref'd) .......................................... 9

*Thomas v. State*
 444 S.W.3d 4 (Tex. Crim. App. 2014) ............................................................. 14

*Tucker v. State*
 No. 05-01-01899-CR, 2002 WL 32397713, at *1-2 (Tex.
 App.—Dallas Oct. 30, 2002, no pet.) (not designated for publication) ......... 11, 12

*Villarreal v. State*
 716 S.W.2d 651 (Tex. App.—Corpus Christi 1986, no pet.) .............................. 12

*Whatley v. State*
　445 S.W.3d 159 (Tex. Crim. App. 2014) .............................................................. 14

*Williams v. State,*
　575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979) ........................................... 11

*Wilson v. State*
　139 S.W.3d 104 (Tex. App.—Texarkana 2004, pet. ref'd) ................................... 8

*Winfrey v. State*
　323 S.W.3d 875 (Tex. Crim. App. 2010) .............................................................. 13

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .................................................................ii

INDEX OF AUTHORITIES .........................................................................iv-vi

STATEMENT OF THE CASE .......................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ............................................. 2

ISSUE PRESENTED .......................................................................................... 2

STATEMENT OF FACTS.................................................................................... 2

SUMMARY OF THE ARGUMENT.................................................................... 4

ARGUMENTS ..................................................................................................... 4

Applied properly, the settled principles of an evidentiary
sufficiency analysis prevent the appellate courts from
becoming a thirteenth juror .............................................................. 4

Bodily injury versus *serious* bodily injury........................................ 5

The facts of this case, as supported by the evidence, are
sufficient to support the jury's finding that the complainant
suffered serious bodily injury ........................................................... 6

   1. A substantial risk of death ................................................. 6

   2. Protracted loss or impairment of the function of
      any bodily member or organ............................................... 10

CONCLUSION ................................................................................................. 13

PRAYER FOR RELIEF ..................................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................. 16

CERTIFICATE OF SERVICE........................................................................... 16

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>  APPELLANT | § <br> § <br> § <br> § | |
| v. | § <br> § | No. PD-0245-15 |
| JUAN BLEA,<br>  APPELLEE | § <br> § <br> § | |

## STATE'S BRIEF ON THE MERITS

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State, by and through its Assistant District Attorney, and respectfully submits its brief on the merits urging that the judgment of the Second District Court of Appeals be reversed.

## STATEMENT OF THE CASE

Appellee was charged with, and found guilty of, the first-degree felony offense of aggravated assault, family violence, and sentenced to five years imprisonment. The majority opinion released by the Second Court of Appeals held that the evidence supporting "serious" bodily injury was insufficient, and reversed and remanded the case to the trial court. The majority opinion ordered the trial court to (1) modify its judgment to delete the first-degree felony conviction of aggravated assault of a family member and to instead reflect a second-degree felony conviction for aggravated assault of a family member through the use of a

1

deadly weapon and (2) conduct a new trial on punishment. Justice Livingston filed a dissenting opinion. This Court granted the State's Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues presented to this Honorable Court for review are narrow in scope, the State does not believe that oral argument will be helpful to the Court in determining whether the Court of Appeals erred.

## ISSUE PRESENTED

Did the Second Court of Appeals improperly apply the standard for reviewing the sufficiency of the evidence in analyzing whether the complainant suffered serious bodily injury?

## STATEMENT OF FACTS

On July 20, 2010, Justina Fassett[1] was living with her young daughter and her ex-boyfriend's parents (2 R.R. at 21-23, 75, 83). The ex-boyfriend, Appellee, was the child's father but was living with a friend at the time (2 R.R. at 22-23).

Appellee stopped by his parent's home to visit but quickly observed a hickey on Justina's neck and became upset (2 R.R. at 26-28, 118). Appellee's parents were at work, and only Justina and the baby were home (2 R.R. at 26-27, 75-76). Although Justina initially told Appellee that the hickey was "none of [his] business," she finally admitted that she got the hickey from a male friend that she

---

[1] By the time of trial, the victim, Justina Fassett, had married Appellee and her married name was Justina Blea (2 R.R. at 19, 73, 90).

2

had hung out with the previous night (2 R.R. at 28-30). Appellee hit Justina in the face and told her that he was going to kill her (2 R.R. at 30-32). Justina asked Appellee to stop because the baby was "fussy" (2 R.R. at 33, 125). Appellee stopped and Justina put the baby in bed with a bottle (2 R.R. at 33, 35, 125).

Appellee and Justina began fighting again, and Appellee hit Justina multiple times in the face and ribs, and he continued to hit and kick her after she fell to the ground (2 R.R. at 32-33, 35-36, 50, 125). The baby woke up and Appellee again stopped (2 R.R. at 35, 37). Justina told Appellee they needed diapers, so Appellee left and later returned with diapers (2 R.R. at 35, 37). The two had another verbal argument, Appellee said that Justina was disrespectful, and then he left the home (2 R.R. at 38).

When Appellee's parents returned from work, they found Justina in a lot of pain and having difficulty breathing (2 R.R. at 33, 36-37, 39-40, 43, 76-77, 84-85, 91, 117-18, 126). She initially said that she had fallen down the stairs but subsequently admitted that was not the truth (2 R.R. at 40, 77, 85-86). Appellee's father called 9-1-1, and Justina was transported to Baylor Hospital *via* ambulance (2 R.R. at 40-41, 60, 79, 86-88, 91, 96, 116). She was later transported to Parkland Hospital, where she remained for four days for treatment and observation (2 R.R. at 42-43, 60, 62, 67-72, 79, 97).

3

Justina suffered from a cut underneath her eye; a lacerated liver; a collapsed lung (pneumothorax); two fractured ribs; fractures to her maxillary sinuses; bruising and scrapes to her ear, face, arms, legs, lower back, chest and abdomen; and she had to have a chest tube inserted at the hospital to help her breathe (2 R.R. at 39, 42-43, 61-69, 72, 94-95, 104-08, 117, 122, 125-26; State's Exhibits 1-17, 20-43, 46). Justina did not work for approximately one month after being released from the hospital (2 R.R. at 44-45, 108).

## SUMMARY OF THE ARGUMENT

The evidence was legally sufficient to support that the complainant suffered serious bodily injury. The Second Court of Appeals improperly acted as a thirteenth juror by determining that the evidence was insufficient in light of the overwhelming evidence of the complainant's injuries and the seriousness of said injuries prior to the effects having been ameliorated by medical treatment.

## ARGUMENTS

**Applied properly, the settled principles of an evidentiary sufficiency analysis prevent the appellate courts from becoming a thirteenth juror.**

In assessing the legal sufficiency of the evidence under *Jackson v. Virginia*, a reviewing court "consider[s] all of the evidence in the light most favorable to the verdict and determine[s] whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.

4

App. 2007 (*citing Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979)). A reviewing court's role is not to become a thirteenth juror, and it should not reevaluate the weight and credibility of the record evidence and substitute its judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318-19). This same standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009). A reviewing court's role on appeal is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Id.* at 518.

**Bodily injury versus *serious* bodily injury.**

"Bodily injury" means physical pain, illness, or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8) (West 2013). "*Serious* bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Penal Code Ann. § 1.07(a)(46) (West 2013) (emphasis added). The Texas Legislature intended that there be a meaningful difference or distinction between the different definitions for "bodily

5

injury" and "serious bodily injury," because the Penal Code provides definitions for each. *See Nash v. State*, 123 S.W.3d 534, 538-39 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987)).

**The facts of this case, as supported by the evidence, are sufficient to support the jury's finding that the complainant suffered serious bodily injury.**

### 1. A substantial risk of death.

Justina testified that her written statement, taken after the assault but prior to being transported to the hospital, indicated that she was in "a ton of pain" after the assault (2 R.R. at 36). She said that she had pain in her chest and back and that it felt like something was broken or terribly injured (2 R.R. at 37). When the ambulance arrived, she could not breathe very well (2 R.R. at 39, 43). Likewise, Appellee's father testified that when he first saw Justina, she looked pretty bad and that she said her back hurt, and he noted that she couldn't walk (2 R.R. at 85, 91). Tim Adamo, the responding officer from the Carrollton Police Department, also testified that Justina was having a hard time breathing (2 R.R. at 118, 126). Furthermore, he testified that Justina was in quite a bit of pain when he arrived: she was holding her ribs, chest, and stomach area while seated on the couch (2 R.R. at 115, 117-18). In fact, when Justina attempted to stand, she fell back on the couch in pain (2 R.R. at 120).

6

Nurse Practitioner Kristie Brown, employed at Parkland Memorial Hospital, testified that she came into contact with Justina on July 22, 2010, and that Justina suffered from a lacerated liver (2 R.R. at 26, 60). She explained that "the liver is a filtering organ, a very large vascular organ that sits on the left – right side of our abdomen" (2 R. R.at 61). Nurse Brown testified that the liver plays a significant role in one's body and is treated seriously in the medical profession (2 R.R. at 65-66). She explained the following relating to the liver:

> "Injuries to the liver can cause a patient to bleed to death very quickly. Knowing that there is an injury to the liver and why it is and whether it is actively bleeding or has developed a blood clot to the liver makes a decision point for what the surgeons do and what we do for the patient"

(2 R.R. at 66).

Staff observed Justina every four to six hours, "mashed on her abdomen," routinely checked her liver and her reaction, and looked for signs of peritonitis (inflammation of the abdomen from bleeding in the liver and irritation to the abdomen) and noticed that the pain gradually progressed after twenty-four to forty-eight hours of observation (2 R.R. at 62-63).

Nurse Brown also testified that Justina suffered from a pneumothorax and she said that injuries to the lungs are treated seriously in the medical field (2 R.R. at 64-67). To assist in understanding the diagnosis of a pneumothorax, Nurse

Brown testified to the following:

> "if you have a box and a balloon blown up inside the box and the balloon shrinks over time, there is air between the box and the balloon, that is a pneumothorax. Most of the time, the lungs should be expanded in our chest and touching the sides of the box, but when the lung collapses, it's just like a balloon that has a small leak in it and collapses down. When that occurs, the patient, Justina, can have trouble breathing and it can affect blood pressure, vital signs that we look at" (2 R.R. at 64-65).

Nurse Brown testified that Justina had undergone a procedure to assist with breathing and that Justina's lungs subsequently provided adequate oxygen (2 R.R. at 65, 67, 69). Justina's mother clarified that Justina had a chest tube inserted to assist with her breathing but that it was removed before Justina was discharged from the hospital (2 R.R. at 97, 104-05, 107-08, 110).

The majority opinion in this case on appeal held that, "there is no evidence from any source that would allow a jury to conclude or infer beyond a reasonable doubt that the complainant's injuries created a substantial risk of death." *Blea v. State,* No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137 at *13-14 (Tex. App.—Fort Worth Feb. 5, 2015, pet. field) (not designated for publication). However, the relevant inquiry as to this issue is the extent of the injuries as inflicted, *not* after the effects have been ameliorated by medical treatment. *Wilson v. State,* 139 S.W.3d 104, 106 (Tex. App.—Texarkana 2004, pet. ref'd) (emphasis added) (*citing Brown v. State,* 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980)); *see Barrera v. State,* 820 S.W.2d 194, 196 (Tex. App.—Corpus Christi 1991,

8

pet. ref'd); *see also Patterson v. State*, No. 11-06-00209-CR, 2008 Tex. App. LEXIS 1525, at *8 (Tex. App.—Eastland 2008, pet. ref'd) (not designated for publication) (testimony by emergency room physician sufficient to show that pneumothorax, common with broken ribs, created a substantial risk of death). As Justice Livingston stated in her dissenting opinion in this case:

> [T]he jury could have reasonably inferred that if the complainant had not received the procedure that Brown described (presumably, the tube that the complainant's mother testified about) to help with her difficulty in breathing, the complainant faced a substantial risk of death. *See Sizemore v. State,* 387 3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd); *see also Patterson v. State,* No. 11-06-00209-CR, 2008 WL 564880, at *3 (Tex. App.—Eastland Feb. 28, 2008, pet. ref'd) (not designated for publication) (concluding that testimony that the victim had trouble breathing and received treatment for a pneumothorax that if left untreated, could cause death, was sufficient to prove that the victim had a serious bodily injury); *Pedro v. State,* No. 01-88-00197-CR, 1988 WL 139708, at 82 (Tex. App.—Houston [1st Dist.] Dec. 22, 1988, no pet.) (not designated for publication) ("[T]he possibility that [a collapsed lung] could cause death, combined with the testimony that the complainant's lung was punctured, does support a findings that [a knife] was capable of causing 'serious bodily injury.'").
>
> Viewing the evidence in the light most favorable to the verdict and allowing the jury to draw reasonable inferences from the evidence, I would hold that based at least on the facts concerning the injury to the complainant's lung, that this injury required treatment through a tube, and that injuries to lungs can be life-threatening, the evidence was sufficient for the jury to find that without treatment, the complainant faced a substantial risk of death. *See* Tex. Penal Code Ann. §1.07(a)(46).

*Blea,* 2015 Tex. App. LEXIS 1137 (Dissenting Opinion at 4-5).

9

Thus, the evidence of the injuries to the complainant's liver and/or lungs was sufficient to support the jury's finding that the complainant suffered serious bodily injury.

### 2. Protracted loss or impairment of the function of any bodily member or organ.

In addition to Justina's multiple other injuries (a cut underneath her eye; lacerated liver; collapsed lung (pneumothorax); fractures to her maxillary sinuses; and bruising and scrapes to her ear, face, arms, legs, lower back, chest and abdomen), Nurse Brown testified that Justina suffered from two fractured ribs, which were treated by pain medication and incentive spirometry (deep-breathing exercises) (2 R.R. at 39, 42-43, 61-69, 72, 94-95, 104-08, 117, 122, 125-26; State's Exhibits 1-17, 20-43, 46). Justina testified that she didn't work for approximately one month after being discharged from the hospital and that she was prescribed pain medications (2 R.R. at 45). Justina testified that she rested while at home but also said that she was out and about (2 R.R. at 35, 48). According to Justina, when she returned to work where she was previously employed as a waitress, Justina decided to be a host in order to avoid "everybody" (2 R.R. at 45-46).[2] But

---

[2] Although Justina testified that she did not suffer from serious permanent disfigurement or have protracted loss of the use of a bodily member or organ, she admitted on cross-examination that she did not know what that meant and said it was something a doctor should have told her about if it existed (2 R.R. at 47-48, 51). It should also be noted that Justina married Appellee after the assault and prior to trial and did not wish to testify against Appellee (2 R.R. at 47).

10

according to Justina's mother, Jennifer Fassett, Justina moved in with her after being discharged from the hospital and just "layed [sic] around" and couldn't work because it hurt to walk (2 R.R. at 108-10). She also testified that Justina became a hostess because she was unable to fulfill her previous duties as a waitress because she could not lift over twenty-five pounds, per her physician's advice (2 R.R. at 109-11). Furthermore, Jennifer testified that in the approximate month after leaving the hospital, Justina could not care for herself even though she was able to walk and go to the bathroom (2 R.R. at 109-10, 113-15).

Thus, the evidence was sufficient to show that the complainant suffered a serious bodily injury because she suffered from a protracted impairment of the functioning of her body. *See* Tex. Penal Code Ann. §1.07(a)(46). In fact, Justice Livingston stated in her dissenting opinion that:

> I would hold that these month-long effects from the assault qualify as a "protracted" impairment of the complainant's bodily functions. *See* Tex. Penal Code Ann. §1.07(a)(46); *Williams v. State,* 575 S.W.2d 30, 33 (Tex. Crim. App. [Panel Op.] 1979) (holding "that the injury which caused [the victim] to lose lifting power in his arm for three months" constituted a protracted impairment of the function of a bodily member, so that "the wound would be classified as serious bodily injury"); *Madden v. State,* 911 S.W.2d 236, 244-45 (Tex. App.—Waco 1995, pet. ref'd) (concluding that there was serious bodily injury by protracted impairment of a bodily member when the victim was shot in the hip, hospitalized for a day and a half, could not walk for a month after the shooting, and had permanent scar tissue where the bullet entered and exited his body); *see also Tucker v. State,* No. 05-01-01899-CR, 2002 WL 32397713, at *1-2 (Tex.

11

App.—Dallas Oct. 30, 2002, no pet.) (not designated for publication) (holding that there was protracted impairment when the victim had a fractured jaw, was restricted to a liquid diet for three weeks, and had jaw pain for a month).

*Blea*, 2015 Tex. App. LEXIS 1137 (Dissenting Opinion at 6).

In contrast, the court in *Villarreal* found that there was no testimony that the fractured ribs in that case created a substantial risk of death and that the injury was not the type from which a trier of fact could infer a substantial risk of death from the injury itself. *See Villarreal v. State*, 716 S.W2d 651 (Tex. App.—Corpus Christi 1986, no pet.). The court also held that evidence of the victim's inability to raise his arms for ten days and pain for two weeks caused by the pain of two fractured ribs, and the fractured ribs themselves, were insufficient to show "serious bodily injury." *See Id.* However, other courts have held otherwise based on the specific facts of their cases. The analysis is fact specific and must be conducted on a case-by-case basis. *See Johnson v. State*, No. 05-10-00465-CR, 2011 Tex. App. LEXIS 6208, at *12 (Tex. App.—Dallas 2011, no pet.) (not designated for publication) (the victim's inability to use her swollen eye for three weeks constituted protracted loss or impairment of that eye, despite being a shorter time than that found insufficient in *Villarreal*).

Here, the Second Court of Appeals improperly resolved conflicts in witnesses' testimony against the jury's verdict. For example, the majority opinion noted contradicting testimony as to the changes in duties at the complainant's job

12

and whether those changes were related to her injuries; the court also noted inconsistent testimony by the complainant's mother as to how long it took before the complainant could walk. The majority found a lack of evidence as to the complainant being unable to control her oxygenation, and pointed out that although the complainant testified that she suffered a lacerated liver, no other evidence of such was presented (although there was evidence which allowed an inference of such). *See Blea,* 2015 Tex. App. LEXIS 1137 at * 8-12. But, it is the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts (2 R.R. at 35, 45-46, 48, 108-11, 113-15). *See Dewberry,* 4 S.W.3d at 740; *Hooper,* 214 S.W.3d at 13.

## CONCLUSION

A jury's verdict in evidentiary sufficiency issues are weighed in favor of affirming a judgment of conviction. *See Winfrey v. State,* 323 S.W.3d 875, 879 (Tex. Crim. App. 2010). Settled principles aimed at preventing appellate courts from becoming a thirteenth juror include: considering the evidence, along with reasonable inferences from the evidence, in the light most favorable to the verdict; deferring to the factfinder's exclusive role to resolve conflicts in the evidence, and to judge the credibility of the witnesses; assessing incriminating evidence cumulatively rather than requiring each fact to directly support guilt; allowing for

13

circumstantial evidence alone to support a conviction; and recognizing that a factfinder is free to accept or reject any or all of the testimony of any witness (*see* Appendix A, Livingston's Dissent, citing *Whatley v. State,* 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Hernandez v. State,* 161 S.W.3d 491, 500-01 (Tex. Crim. App. 2005). Here, the majority improperly acted as a thirteenth juror.

In this case, a rational juror could have found the testimony sufficient to prove Appellee caused serious bodily injury to Justina, beyond a reasonable doubt. The testimony adduced at trial showed that Justina suffered a lacerated liver, which can cause bleeding and can result in death, and a lung injury (pneumothorax), which affects one's ability to breathe adequately (2 R.R. at 26, 60-67). Both of these injuries are treated seriously by medical personnel (2 R.R. at 64-67). Justina had difficulty breathing after the assault, but her lungs functioned normally *after* hospital staff inserted a chest tube (2 R.R. at 39, 43, 65, 67, 69, 97, 104-05, 107-08, 110, 118, 126). Also, Justina suffered from two broken ribs, which required pain medications and breathing exercises to tolerate the pain and assist in healing (2 R.R. at 64, 69).

## PRAYER FOR RELIEF

For the reasons stated herein, the State prays this Court will reverse the judgment of the Second District Court of Appeals, find that the evidence is sufficient to uphold Appellee's conviction, and affirm the judgment of the trial court.

Respectfully submitted,

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division

**ANDREA R. SIMMONS**
Assistant Criminal District Attorney
State Bar No. 24053478
1450 East McKinney
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
andrea.simmons@dentoncounty.com

15

## CERTIFICATE OF COMPLIANCE

The State certifies that the State's Brief on Merits in the instant cause contains a word count of 3355, said count being generated by the computer program Microsoft Word that was used to prepare the document.

_Andrea R Simmons_
**ANDREA R. SIMMONS**

## CERTIFICATE OF SERVICE

A true copy of the State's Brief on Merits has been sent by United States Mail, postage prepaid, to counsel for Appellee, Joseph Boswell, BOSWELL & MOORE, 1504 East McKinney Street, Suite 200, Denton, Texas 76209, on this, the 23rd day of July 2015.

_Andrea R Simmons_
**ANDREA R. SIMMONS**

16